FILED
JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: Sep 28, 2026

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| **JAMES POE**, on behalf of himself and others similarly situated, | : | |
| | : | CASE NO. 1:26CV-175-GNS |
| Plaintiff, | : | |
| | : | JUDGE Greg N. Stivers |
| v. | : | |
| | : | **JURY DEMAND ENDORSED HEREON** |
| **LOGAN ALUMINUM INC.** | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**

Named Plaintiff James Poe, individually and on behalf of others similarly situated, files his Collective and Class Action Complaint against Defendant Logan Aluminum Inc. for its failure to pay its employees overtime wages, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA") and the Kentucky Wages and Hours Act ("KWHA"), KRS 337.010, *et seq*. The FLSA claim is brought as a collective action pursuant to 29 U.S.C. § 216(b). The KWHA claims are brought as a class action pursuant to Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Named Plaintiff's own conduct and are made on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for violations of the FLSA.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Kentucky over which this Court

maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy.

3. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant conducts significant business in this District, Defendant is registered to do business in the state of Kentucky, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## II. PARTIES

### A. Named Plaintiff

4. Named Plaintiff James Poe is a resident of Kentucky, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Operating Technician at Defendant's facility in Russellville, Kentucky between approximately September 2017 and January 2025.

5. At all relevant times, Named Plaintiff primarily performed non-exempt duties for Defendant in furtherance of its business of producing and distributing aluminum and aluminum products.

6. When he began his employment with Defendant, Named Plaintiff was paid a base hourly rate of approximately twenty-three dollars per hour. He received several pay increases during his employment and, toward the end of his employment, was paid a base hourly rate of approximately forty-five dollars per hour.

7. During his employment with Defendant, Named Plaintiff was often scheduled to work twelve-hour shifts. His scheduled shift hours generally rotated between 7:00 A.M. and 7:00 P.M. and 7:00 P.M. and 7:00 A.M.

8. During his employment with Defendant, Named Plaintiff's weekly schedule

generally fluctuated on a two-week rotation. For example, in the first week in this rotation, Named Plaintiff was often scheduled to work four days. In the second week of the rotation, Named Plaintiff was regularly scheduled to work three days.

9. Practically, this meant that Named Plaintiff was frequently scheduled to work 48 hours in one workweek, and 36 hours in the next.

10. Accordingly, during his employment with Defendant, Named Plaintiff regularly worked 40 or more hours in one or more workweek(s).

11. Named Plaintiff brings this action on behalf of himself and other similarly situated employees and has given his written consent to bring this action to collect unpaid overtime compensation under the FLSA. Named Plaintiff's Consent to Join form is filed herewith and attached as **Exhibit A**.

**B. Current Opt-In Plaintiffs**

12. In addition to Named Plaintiff, numerous additional individuals who worked for Defendant as hourly, non-exempt production/manufacturing employees at its facility in Russellville, Kentucky have opted in to this action pursuant to 29 U.S.C. § 216(b) ("Current Opt-In Plaintiffs").

13. Opt-in Plaintiff Bryan Haley is a resident of Kentucky, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Operator at Defendant's Russellville, Kentucky facility between approximately 2018 and 2023. Opt-in Plaintiff Haley's Consent to Join form is filed herewith and attached as **Exhibit B**.

14. Opt-in Plaintiff Ronnie Pyle is a resident of Kentucky, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Operating Technician at Defendant's Russellville, Kentucky facility between approximately 2017 and October 2024.

Opt-in Plaintiff Pyle was scheduled to work twelve-hour shifts with Defendant, generally from 7:00 A.M. to 7:00 P.M. and vice versa. Like Named Plaintiff, Opt-in Plaintiff Pyle's rotating schedule often resulted in him working 48 hours in one week and 36 hours in the second week. Opt-in Plaintiff Pyle's Consent to Join form is filed herewith and attached as **Exhibit B**.

15. Opt-in Plaintiff Matthew Croslin is a resident of Tennessee, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Operating Technician at Defendant's Russellville, Kentucky facility between approximately 2002 and January 2025. Opt-in Plaintiff Croslin was scheduled to work both twelve-hour and eight-hour shifts with Defendant, generally from 7:00 A.M. to 7:00 P.M. on weekends and 7:00 A.M. to 3:00 P.M./3:00 P.M. to 11:00 P.M./11:00 P.M. to 7:00 A.M. on weekdays. Like Named Plaintiff, Opt-in Plaintiff Croslin frequently worked forty or more hours in a workweek. Opt-in Plaintiff Croslin's Consent to Join form is filed herewith and attached as **Exhibit B**.

16. Opt-in Plaintiff Nathan Ramsey is a resident of Kentucky, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Operating Technician at Defendant's Russellville, Kentucky facility between approximately December 2021 and August 2025. Opt-in Plaintiff Ramsey was scheduled to work both twelve-hour and eight-hour shifts with Defendant, generally from 7:00 A.M. to 7:00 P.M. on weekends and 7:00 A.M. to 3:00 P.M./3:00 P.M. to 11:00 P.M./11:00 P.M. to 7:00 A.M. on weekdays. Like Named Plaintiff, Opt-in Plaintiff Ramsey frequently worked forty or more hours in a workweek. Opt-in Plaintiff Ramsey's Consent to Join form is filed herewith and attached as **Exhibit B**.

17. Opt-in Plaintiff Charles Shelton III is a resident of Kentucky, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Operating Technician at Defendant's Russellville, Kentucky facility between approximately November 2016

and May 2025. Opt-in Plaintiff Shelton was scheduled to work both twelve-hour and eight-hour shifts with Defendant, generally from 7:00 A.M. to 7:00 P.M. on weekends and 7:00 A.M. to 3:00 P.M./3:00 P.M. to 11:00 P.M./11:00 P.M. to 7:00 A.M. on weekdays. Like Named Plaintiff, Opt-in Plaintiff Shelton frequently worked forty or more hours in a workweek. Opt-in Plaintiff Shelton's Consent to Join form is filed herewith and attached as **Exhibit B**.

18. Opt-in Plaintiff John Chapman is a resident of Kentucky, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Operating Technician at Defendant's Russellville, Kentucky facility between approximately 2019 and 2025. Opt-in Plaintiff Chapman was scheduled to work both twelve-hour and eight-hour shifts with Defendant, generally from 7:00 A.M. to 7:00 P.M. on weekends and 7:00 A.M. to 3:00 P.M./3:00 P.M. to 11:00 P.M./11:00 P.M. to 7:00 A.M. on weekdays. Like Named Plaintiff, Opt-in Plaintiff Chapman frequently worked forty or more hours in a workweek. Opt-in Plaintiff Chapman's Consent to Join form is filed herewith and attached as **Exhibit B.**

19. Opt-in Plaintiff Jeffrey Gish is a resident of Kentucky, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Maintenance at Defendant's Russellville, Kentucky facility between approximately 2007 and 2025. Opt-in Plaintiff Gish was scheduled to work eight-hour shifts with Defendant, generally from 7:00 A.M. to 3:00 P.M. Like Named Plaintiff, Opt-in Plaintiff Gish frequently worked forty or more hours in a workweek. Opt-in Plaintiff Gish's Consent to Join form is filed herewith and attached as **Exhibit B.**

20. Opt-in Plaintiff Jalen Sublett is a resident of Kentucky, and worked for Defendant as an hourly, non-exempt production/manufacturing employee in the role of Operating Technician at Defendant's Russellville, Kentucky facility between approximately 2022 and 2025. Opt-in

Plaintiff Sublett was scheduled to work both twelve-hour and eight-hour shifts with Defendant, generally from 7:00 A.M. to 7:00 P.M. on weekends and 7:00 A.M. to 3:00 P.M./3:00 P.M. to 11:00 P.M./11:00 P.M. to 7:00 A.M. on weekdays. Like Named Plaintiff, Opt-in Plaintiff Sublett frequently worked forty or more hours in a workweek. Opt-in Plaintiff Sublett's Consent to Join form is filed herewith and attached as **Exhibit B.**

**C. <u>Defendant</u>**

21. Defendant is a foreign corporation that is registered to conduct business in Kentucky.

22. Defendant is a manufacturer and distributor of aluminum and aluminum products.[1]

23. Defendant currently operates a manufacturing facility in Russellville, Kentucky, that provides over 45% of the aluminum used in the North American can market, and where Defendant employs over 1300 individuals.[2]

25. Defendant's Russellville facility generally operates on a continuous production schedule and utilizes rotating shifts with its production/manufacturing employees to accomplish this.

26. At all relevant times, Defendant has been an "employer" as the FLSA and the KWHA define that term due to its employment of Named Plaintiff, Current Opt-In Plaintiffs, and those similarly situated as described herein.

27. At all relevant times, Defendant has had the authority to hire and fire employees, supervise and control employees' work schedules and conditions, determine the rate and method of employees' pay, and/or maintain employees' employment records.

---

[1] *Markets We Participate In*, LOGAN ALUMINUM, https://www.logan-aluminum.com/products-markets/ (last visited Sept. 28, 2026).
[2] *History*, LOGAN ALUMINUM, https://www.logan-aluminum.com/careers/ (last visited Sept. 28, 2026).

28. At all relevant times, Defendant has determined the essential terms and conditions of employment for Named Plaintiff, Current Opt-In Plaintiffs, and similarly situated employees.

29. At all relevant times, Defendant has had control and authority over Named Plaintiff's, Current Opt-In Plaintiffs', and similarly situated employees' working conditions. At all relevant times, Defendant exercised that authority and control over Named Plaintiff, Current Opt-In Plaintiffs, and similarly situated employees.

30. At all relevant times, Defendant suffered or permitted Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated employees to work. The work performed by Named Plaintiff, Current Opt-In Plaintiffs, and similarly situated employees benefited Defendant and directly or indirectly furthered its interests.

31. Because the work performed by Named Plaintiff, Current Opt-In Plaintiffs, and all other similarly situated employees benefited Defendant and directly or indirectly furthered its interests, Defendant is the employer of Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated employees under the FLSA's definition of "employer."

32. Upon information and belief, Defendant applies or causes substantially the same employment policies, practices, and procedures to be applied to its employees at all of Defendant's locations, including policies, practices, and procedures relating to the payment of wages, overtime, and timekeeping.

33. At all relevant times, Defendant, as a corporate entity producing and distributing aluminum and aluminum products, was an enterprise engaged in "commerce or in the production of goods for commerce" because it had employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

34. At all relevant times, Defendant has had annual gross volumes of sales made, or business done, of not less than $500,000 each year.

35. Upon information and belief, at all relevant times, Defendant was fully aware that it was legally required to comply with the wage and overtime laws of the United States and the Commonwealth of Kentucky.

## III. FACTS

36. At all relevant times, Defendant employed Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated production/manufacturing employees as hourly, non-exempt employees.

37. At all relevant times, Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees worked 40 or more hours in one or more workweek(s) during the three years immediately preceding the filing of this Complaint.

38. During their employment with Defendant, Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees were involved in manufacturing aluminum and aluminum products. As such, as part of their jobs, at all relevant times, they handled hazardous or potentially hazardous materials while processing their respective products under dangerous conditions.

39. At all relevant times, these inherently hazardous conditions demanded that Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees always maintain awareness of the status of production, any issues that arose during the previous shift or might arise during their shift, any and all potential safety concerns, and any special instructions necessary for the efficient and safe operations.

40. To ensure that they had all of the required information that they needed to ensure safe and efficient operations, Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees were required to arrive before the scheduled start of their shifts to prepare for and attend a mandatory pre-shift meeting which began substantially before the scheduled start of their shifts.

41. After arriving at Defendant's facility, Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees swiped their security badge at a turnstile to gain access to the facility.

42. After badging in, Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees would walk into their assigned building and begin preparing for the mandatory pre-shift meeting.

43. This meeting prep consisted of reviewing notes from the previous shift regarding production status, issues, and safety. These notes were typically included on a computer that Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees could access, but Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees often had to seek out employees from the previous shift in-person to discuss if the notes were missing or incomplete.

44. This pre-meeting preparatory work was necessary because Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees were expected to be aware of and talk about production and safety conditions at the pre-shift meeting. If they did not prepare beforehand, they would be unable to constructively participate in the meeting, would hamper the flow of production, and could be subject to discipline.

45. Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees performed unpaid work before the pre-shift meeting engaging in this preparatory work.

46. After engaging in this preparatory work, Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees would then walk to and attend a pre-shift meeting. This pre-shift meeting generally began substantially before the scheduled start of their shifts.

47. During these pre-shift meetings, Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees would discuss various aspects of production, safety, and maintenance with production/manufacturing employees from both their own department and other departments, as well as supervisors/managers.

48. The topics that were discussed during these meetings included a general update on the outgoing shift or the previous few days (if they had been off for a few days), any current or future anticipated issues with Defendant's machinery, any ongoing safety issues like fires or other hazardous conditions, current and expected production numbers and quotas, maintenance that was currently being performed on machines or was scheduled to be performed, and other topics related to production and safety.

49. These mandatory pre-shift meetings were crucial to Named Plaintiff's, Current Opt-In Plaintiffs' and other similarly situated production/manufacturing employees' job duties, were required by Defendant, and were primarily for Defendant's benefit and occurred at Defendant's direction.

50. Attendance at the pre-shift meetings was not voluntary. The meetings and all of the preparatory work for the meetings were directly related to Named Plaintiff's, Current Opt-In

Plaintiffs', and other similarly situated hourly production/manufacturing employees' jobs. Moreover, the pre-shift meetings and preparatory work were productive work, including gathering and exchanging information about the status of production, equipment, maintenance, and safety conditions, and receiving direction about the work to be performed during employees' shifts.

51. Hourly production/manufacturing employees were subject to discipline if they were late to these pre-shift meetings.

52. A safe and efficient transition between shifts is essential to Defendant's business of producing and distributing aluminum and aluminum products, because unsafe conditions, injuries, or a lack of knowledge regarding the status of production or maintenance can hamper, slow down, or even stop Defendant's operations.

53. Defendant itself acknowledges that safety is one of its top priorities, and that ensuring a safe work environment is crucial to maintaining "manufacturing excellence."[3]

54. Given the environment in which they work(ed), the preparatory work and mandatory pre-shift meetings were required to ensure the efficient and safe transition of production/manufacturing duties from one shift to the next and were therefore inextricably intertwined with Named Plaintiff's, Current Opt-In Plaintiffs', and other similarly situated production/manufacturing employees' job duties. Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated production/manufacturing employees could not properly perform their work duties without preparing for and participating in these mandatory pre-shift meetings

55. Accordingly, both the pre-shift meeting and the preparatory work that Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees engaged in prior to the pre-shift meeting are integral and indispensable to their jobs as

---

[3] *See* Logan Aluminum Plant Profile, attached as **Exhibit C**, pg. 8; *Manufacturing Excellence*, LOGAN ALUMINUM, https://www.logan-aluminum.com/culture/manufacturing-excellence/ (last visited Sept. 28, 2026).

production/manufacturing workers, and therefore compensable work activities under the FLSA and the KWHA.

56. Since the preparatory work that Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees engaged in prior to the pre-shift meeting began the continuous workday under the FLSA, and all time thereafter was therefore compensable work time.

57. Despite performing these duties significantly before their scheduled shifts, Defendant did not pay Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees for the preparatory work described above or the time spent attending pre-shift meetings. Instead, Defendant generally instructed its employees to report only their scheduled shifts and limited their pay to the scheduled shift time.

58. Defendant paid Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees based on their scheduled shifts rather than their actual time worked, such that work performed outside of their scheduled shifts was generally not paid.

59. During their employment with Defendant, Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees were not fully and properly paid for all overtime wages earned because Defendant required them to perform pre-shift work without compensation in weeks in which they worked 40 or more hours.

60. For example, during workweeks when Named Plaintiff was scheduled to work shifts totaling 48 or more hours, Named Plaintiff was not compensated for all overtime hours worked due to Defendant failing to compensate him for the work performed outside of his scheduled shifts as described herein. Because Named Plaintiff was already scheduled to work 48

hours in certain workweeks, all of the uncompensated work he performed in those weeks constituted unpaid overtime. Named Plaintiff estimates that the unpaid overtime totaled approximately two to three hours in workweeks in which he worked at least four shifts.

61. Defendant similarly failed to pay earned overtime wages to Current Opt-In Plaintiffs, and other similarly situated hourly production/manufacturing employees during weeks in which they worked 40 or more hours for the same reasons.

62. During relevant times, Defendant knew of and acted willfully regarding its conduct described herein. Defendant knew that Named Plaintiff, Current Opt-In Plaintiffs, and others similarly situated worked overtime without compensation for all such hours.

63. The FLSA requires Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

64. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. See 29 C.F.R. § 516.2.

65. Defendant failed to track, keep, and/or transmit the hours accurately worked each day by Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated production/manufacturing employees.

66. Defendant willfully transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which do not include all work performed. The incorrect and/or incomplete records had the direct effect of reducing Defendant's labor costs to the detriment of Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated production/manufacturing employees.

67. Thus, Defendant willfully did not record and pay all hours worked in violation of the FLSA and violated the FLSA's recordkeeping requirements.

68. Upon information and belief, Defendant applied these same policies to all its hourly, non-exempt production/manufacturing employees at all its locations.

69. As a result of Defendant's companywide policy and/or practice described herein, Defendant knew or had reason to know that it was not compensating Named Plaintiff, Current Opt-In Plaintiffs, and other similarly situated production/manufacturing employees for all overtime hours worked.

70. Defendant is in possession and control of the necessary documents and information from which Named Plaintiff and Current Opt-In Plaintiffs would be able to calculate damages, and/or Defendant otherwise failed to keep such records.

71. Before filing this Complaint, the undersigned requested that Defendant produce pay and time records for Named Plaintiff and Current Opt-In Plaintiffs. Defendant declined to produce those records.

## IV. FLSA COLLECTIVE ALLEGATIONS

72. Named Plaintiff brings his FLSA overtime claims pursuant to 29 U.S.C. § 216(b) as a representative action for himself, Current Opt-In Plaintiffs, and all other similarly situated

production/manufacturing employees of the opt-in collective. The FLSA collective consists of the following:

> **All current and former hourly, non-exempt production/manufacturing employees of Defendant who were paid for 40 or more hours of work in any workweek beginning three years before the filing date of this Complaint and continuing through final disposition of this case (hereinafter the "FLSA Collective" or "Potential FLSA Collective Members").[4]**

73. This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA, liquidated damages, and attorneys' fees.

74. In addition to Named Plaintiff and Current Opt-In Plaintiffs, the Potential FLSA Collective Members have been denied proper overtime compensation due to the companywide time and pay policies and/or practices described herein. Defendant failed to meet the minimum requirements of the FLSA by not paying Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members overtime wages for all overtime hours worked. Named Plaintiff is representative of those other similarly situated production/manufacturing employees and is acting on behalf of their interests as well as his own in bringing this action.

75. The identities of the Potential FLSA Collective Members are known to Defendant and are readily identifiable through Defendant's records. These individuals may be readily notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) for the collective adjudication of their claims for overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

[4] Named Plaintiff reserves the right to amend his definition of whom he seeks to send Court-authorized notice of this action to upon further investigation and discovery.

76. The net effect of Defendant's policies and practices is that Defendant willfully failed to fully and properly pay Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members overtime wages. Thus, Defendant enjoyed substantial ill-gotten profits at the expense of Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members.

## V. RULE 23 CLASS ALLEGATIONS

53. Named Plaintiff brings his KWHA claims pursuant to Rule 23 as a class action on behalf of himself and all other members of the following class:

> **All current and former hourly, non-exempt production/manufacturing employees of Defendant in Kentucky who were paid for at least forty (40) hours of work in any workweek beginning three (3) years prior to the filing date of this Complaint and continuing through the final disposition of this case (hereinafter the "Kentucky Rule 23 Class" or "Kentucky Rule 23 Class Members").**

54. During relevant times, Named Plaintiff and those Kentucky Rule 23 Class Members worked at least 40 hours per workweek, but they were not correctly compensated for overtime wages for all hours worked in excess of 40 because of Defendant's policies and/or practices described herein.

55. The Kentucky Rule 23 Class, as defined above, is so numerous that joinder of all members is impracticable. Named Plaintiff estimates that there are likely hundreds of putative Kentucky Rule 23 Class Members.

56. Named Plaintiff is a member of the Kentucky Rule 23 Class, and his claims for unpaid wages are typical of the claims of other members of the Kentucky Rule 23 Class. The Kentucky Rule 23 Class Members' claims do not arise from circumstances specific to the Named Plaintiff but from the common policies and practices described herein that apply to all class

members.

57. Named Plaintiff will fairly and adequately represent the Kentucky Rule 23 Class and the interests of all members of the Kentucky Rule 23 Class.

58. Named Plaintiff has no interest that is antagonistic to or in conflict with those interests of the Kentucky Rule 23 Class that he has undertaken to represent.

59. Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Kentucky Rule 23 Class.

60. Questions of law and fact are common to the Kentucky Rule 23 Class.

61. Class certification is appropriate under Rule 23(b)(3) because the questions of law and fact common to the Kentucky Rule 23 Class predominate over questions affecting individual members of the Kentucky Rule 23 Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

62. Questions of law and fact that are common to the Kentucky Rule 23 Class include but are not limited to: (a) whether Defendant violated the KWHA by failing to pay the Kentucky Rule 23 Class for hours worked in excess of 40 per workweek because of Defendant's pay policies and practices described herein; (b) whether Defendant's violations of the KWHA were knowing and willful; (c) what amount of unpaid and/or withheld overtime compensation is due to Named Plaintiff and other members of the Kentucky Rule 23 Class on account of Defendant's violations of the KWHA; and (d) what amount of prejudgment interest is due to the Kentucky Rule 23 Class members for unpaid overtime or other compensation that was withheld or otherwise not paid to them.

63. A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's and the Kentucky Rule 23 Class's claims and will prevent undue financial,

administrative, and procedural burdens on the parties and the Court. Named Plaintiff and counsel are not aware of any pending litigation on behalf of the Kentucky Rule 23 Class, as defined herein, or on behalf of any individual alleging a similar claim. Because the damages sustained by individual members are modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## VI. CAUSES OF ACTION

### COUNT I:
### FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME

64. All of the preceding paragraphs are realleged as if fully rewritten herein.

65. This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and the FLSA Collective.

66. The FLSA requires that employees receive overtime compensation at a rate of 1.5 times their regular rate of pay for hours worked over 40 per workweek. 29 U.S.C. § 207(a)(1).

67. During the three years preceding the filing of this Complaint, Defendant employed Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members.

68. Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members regularly worked more than 40 hours in workweeks.

69. Defendant violated the FLSA with respect to Named Plaintiff, Current Opt-In Plaintiffs, and the FLSA Collective by failing to compensate them for overtime wages for all hours worked over 40 hours in a workweek because of Defendant's policies and/or practices described herein.

70. Defendant also violated the FLSA by failing to maintain and preserve payroll or

other records containing, among other things, the hours worked each workday, and the total hours worked each workweek. *See* 29 C.F.R. §§ 516.2, *et seq*.

71. Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members were not exempt from receiving FLSA overtime compensation.

72. Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members were entitled.

73. The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

74. As a direct and proximate result of Defendant's conduct, Named Plaintiff, Current Opt-In Plaintiffs, and the Potential FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest, attorneys' fees, and all other remedies available on behalf of himself and the Potential FLSA Collective Members.

**COUNT II:**
**K.R.S. § 337.285 – RULE 23 CLASS ACTION FOR KWHA VIOLATION**

75. All of the preceding paragraphs are realleged as if fully rewritten herein.

76. Named Plaintiff and the Kentucky Rule 23 Class Members were employed by Defendant.

77. During all relevant times, Defendant was an employer covered by the KWHA, and Named Plaintiff and the Kentucky Rule 23 Class Members have been employed by Defendant

within the meaning of the KWHA.

78. The KWHA requires that covered employees receive overtime compensation "not less than one and one-half times" their regular rate of pay for hours over 40 in a workweek. KRS 337.285.

79. By failing to pay Named Plaintiff and the Kentucky Rule 23 Class Members all overtime wages due to them, Defendant violated the KWHA.

80. In violating the KWHA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Kentucky law.

81. As a result of Defendant's willful violation, Named Plaintiff and the Kentucky Rule 23 Class Members are entitled to unpaid wages and liquidated damages.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A. Directing Defendant to provide all relevant policies and procedures regarding timekeeping and compensation, as well as all payroll, remuneration, timekeeping, and related records of the Potential FLSA Collective Members and the Kentucky Rule 23 Class Members;

B. Directing Defendant to provide all contact information, including but not limited to names, dates of employment, mailing addresses, telephone numbers, and email addresses of the Potential FLSA Collective Members;

C. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the Potential FLSA Collective Members, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

D. Certifying the proposed Kentucky Rule 23 Class under the KWHA.

E. Tolling the statute of limitations for all members of the FLSA Collective from the date on which this matter was initially filed until the date on which they file consent to join forms;

F. Finding that Defendant failed to keep accurate records and that, as a result, Named Plaintiff, Current Opt-In Plaintiffs, the FLSA Collective, and the Kentucky Rule 23 Class are entitled to prove their hours worked with reasonable estimates;

G. Awarding to Named Plaintiff, Current Opt-In Plaintiffs, the FLSA Collective Members who join this case, and the Kentucky Rule 23 Class unpaid overtime wages to be determined at trial, together with any liquidated damages allowed by the FLSA and the KWHA;

H. Awarding to Named Plaintiff, Current Opt-In Plaintiffs, the FLSA Collective Members who join this case, and the Kentucky Rule 23 Class costs, disbursements, and reasonable allowances for fees of counsel and experts, as well as reimbursement of expenses;

I. Awarding to Named Plaintiff, Current Opt-In Plaintiffs, the FLSA Collective Members who join this case, and the Kentucky Rule 23 Class such other and further relief as the Court deems just and proper;

J. Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

K. Rendering judgment against Defendant for all damages, relief, or any other recovery whatsoever.

## **JURY DEMAND**

Named Plaintiff requests a trial by a jury on all triable issues.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*<u>/s/ Matthew J.P. Coffman</u>*
Matthew J.P. Coffman (OH Bar # 0085586) (*pro hac vice* forthcoming)
Shannon M. Draher (OH Bar # 0074304) (*pro hac vice* forthcoming)
Adam C. Gedling (OH Bar # 0085256) (*pro hac vice* forthcoming)
Tristan T. Akers (OH Bar # 0102298) (*pro hac vice* forthcoming)
1550 Old Henderson Rd
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
sdraher@mcoffmanlegal.com
agedling@mcoffmanlegal.com
takers@mcoffmanlegal.com

*Attorneys for Named Plaintiff and those similarly situated*